## PETER TAYLOR V. THE STATE.

35   97
38a 692

1. Those provisions of the State and Federal Constitutions which declare that no person shall be subject to be twice put in jeopardy of life or limb for the same offense, have reference only to the trial and verdict; and no person can claim their protection, unless he has once been tried by a lawful jury, upon a good indictment, and been acquitted or convicted. (Moseley v. The State, 33 Texas, 671, cited by the court, and approved.)

2. It seems that a sound discretion must of necessity be allowed a judge, to discharge a jury in a criminal case, before verdict found, whenever there is a manifest necessity for such action, or whenever the ends of public justice would otherwise be defeated.

3. Though on a trial for murder the jury, before convicting the accused, must be satisfied by the evidence, beyond a reasonable doubt, that the person whose killing is proved is the identical person for whose murder the indictment was found, yet it is not necessary that this identification be established by witnesses who, by actual inspection of the body of the deceased, recognized it as that of the person for whose murder the indictment was found. This identification may be established by the same character of proof as that which is admitted to identify the accused on trial with the defendant charged in the indictment, or as that which is admissible to establish the other material facts; the best evidence, however, of which the case is susceptible, being requisite to establish each and all of such facts.

4. Defendant being on trial for the murder of one Evans, no witness who knew Evans proved that the body found was his. The evidence identifying it as his consisted, in part, of a minute description of the body found, and the testimony of the father of Evans, to the effect that by the description he recognized it as his ; and in part, of proof identifying as Evans's the clothing, the wagon and team, and certain papers and other articles found on or near the body of the deceased. *Held*, that evidence of this character was competent, and might be sufficiently conclusive to establish the identification beyond a reasonable doubt.

5. The omission of the court below to charge the jury on the subject of reasonable doubt, in a murder case, is not available in this court as error, unless the proper charge on that subject was asked of the court below, on the trial of the case.

7—XXXV

---
Argument for appellant.
---

APPEAL from Harrison.    Tried below before the Hon.
J. B. Williamson.

The opinion of the court, in its brief review of the
evidence, states it as clearly and as fully as it appears
in the statement of facts, embodied in the transcript.
No person who saw the body of the deceased had
known Morgan Evans in his lifetime.   His father and
brother were witnesses, but they did not see the body.

The killing was done with an ax, which was found
and identified, and traced to the possession of the ac-
cused, who was a freedman, and whose object appears
to have been to possess himself of the property of the
deceased.

The "former jeopardy" was relied on by special plea
in bar, and the first indictment, as well as the proceed-
ings under it, were put in evidence.

The verdict was for murder in the first degree, with
the penalty of death.   There was judgment accordingly,
but execution was stayed to abide this appeal.

*James Turner*, for the appellant.—It was con-
tended on the trial, and is now contended, that the
defendant, with the discharge of the jury, was en-
titled to his discharge, and should have been dis-
charged on motion.   The provision of the Constitution
of the United States,        *      *      *      *      *      *
"Nor shall any person be subject, for the same offense,
to be twice put in jeopardy of life or limb," has been
incorporated in our State Constitution, and re-affirmed
in the adoption of the code of criminal procedure, and
is justly regarded as the very bulwark of the liberty of
the citizen.   The principle can be traced far down the
line of precedent and authority, even to the earliest
days of English jurisprudence; and since the great
charter has gradually found a place in the written con

stitutions of all free governments, and even in the
most despotic lands, it has never been contended, that
after an acquittal according to the forms of the law, an
offender could again be put upon his trial.    The prin-
ciple was engrafted in the Constitution of the United
States, and has gradually found its way into the laws of
every State in the Union, either by organic law or legis-
lative enactment.    It would surely be reasonable to
suppose that a principle so old, and so universally
adopted as a rule of action, would be so well under-
stood that courts and lawyers could not differ in regard
to its meaning.

It rested, however, with the Legislature of the State
of Texas, in 1856—a body of men who assumed to
array their own wisdom against the wisdom of all the
generations of the common law—who, in the form of
a legislative enactment, presumed to upset and over-
turn that most magnificent edifice, reared, shaped and
fashioned by the intellectual labors of the fathers of
the common law, and which has been from time to time
admired, adorned and embellished by the genius of
Hale, Mansfield and Eldon ; by Marshall, Story and
Kent; and gave us, in lieu thereof, our present code of
criminal procedure.    Not content with upturning and
rooting out the last vestige of the common law in
criminal practice, this extraordinary body of men
absolutely assumed to exercise the power of the courts,
and lay down rules by which the Constitution of the
State and of the United States must be interpreted.
And they tell us that when the Constitution says that
no person shall be twice put in jeopardy, etc., it is in-
tended to mean that such person cannot be again sub-
jected to a second prosecution for the same offense,
after he has been prosecuted and convicted in a court
of competent jurisdiction (see Code Crim. Pro., Chap.

1, § 18) ; and that it will exempt no person convicted on
an illegal indictment, or where a jury is discharged
without a verdict. (Code Crim. Pro., Chap. 1, Art. 19.)
And the next article announces the astounding propo-
sition, that an acquittal exempts a defendant from
further prosecution. It is a matter of great regret that
a proposition so plain should have lain hid from the
research of lawyers through all the long years that the
law has been studied and practiced as a science and
profession; and the Legislature of 1856 deserves the
thanks of the profession for a discovery which, but for
them, would doubtless have been buried from ages yet
to come.

But, however much we may admire the wisdom of
the Legislature of 1856, and their great talent for dis-
covering new principles, we are compelled to conclude
that that body was not the legally constituted tribunal
for the purpose of deciding questions of constitutional
construction. The Constitution says one thing, but the
Legislature says it means something else. The Consti-
tution says a citizen shall not be twice put in jeopardy
for the same offense ; and we are told by the Legisla-
ture of 1856 that this means that when put on trial he
must be either acquitted or convicted—or, in other
words, that a verdict, and that only, amounts to legal
jeopardy. Now take, if your honors please, the con-
struction given to the constitutional provision in article
eighteenth of the Code of Criminal Procedure, and we
have an unmeaning thing in the Constitution, and that,
too, in the provision we have all been accustomed to con-
sider as the very bulwark of the liberty of the citizen.
He must be duly convicted of the offense, and then the
provision protects him from another conviction, says
the Legislature. Now, in due deference to the opinion
of that learned body, I will venture to say that the ex-

emption from another prosecution rests on other and familiar rules of law, independent from the provision quoted. The law affixes the punishment for offenses, and the punishment once inflicted, the citizen is protected by virtue of such former conviction, and because there is no law affixing a double punishment for the same offense. Strike from the Constitution the article quoted, and still, after having been convicted of an offense, such conviction could be pleaded in bar of a second prosecution, as a thing adjudicated between the State and the citizen ; and the same rule prevails where he is acquitted. The provision, though, says nothing about conviction or acquittal, but that he must not be twice put in jeopardy. A man is arraigned, say for murder, and the judge may be of opinion that if the trial proceeds, the party will be acquitted, and assume the power and authority of discharging the jury. The defendant must then remain in custody until another bill is found; and if the power exists once to take such a course, it exists twice, three times and a hundred times—and all these times the defendant must return to jail, because, forsooth, a jury had not found a verdict. Will there be found a lawyer who will say he is not entitled to his discharge from the moment a jury has been discharged from the consideration of his cause without his consent ? Murder is punished with death— of course, if convicted and the sentence executed, the person can never be tried again by human tribunals, and then it follows, as a matter of course, that as the provision does not apply until he has been duly tried and convicted, that it cannot apply at all to a case of murder, because we have just seen that the conviction and execution puts him beyond human tribunals.

Perhaps if the Legislature of 1856 had gone a little further in their voyage for the discovery of new legal

principles, they would have enlightened us by discovering that the framers of our Constitution intended to grant the offender convicted and executed in Texas, immunity from prosecution for the same offense in the tribunal to be organized in the great hereafter. As it is, it is a great comfort to a man, when he is about to be hung for rape, murder or treason, to know that he cannot be tried, convicted and hung for it again; this consoling reflection, arising from the knowledge of the fact that he can never be hung again, he owes to the great research of the Legislature of 1856, undertaken by them, doubtless, for the express purpose of administering consolation to dying criminals. He must be tried and duly convicted, and then he can't be tried again; and they would have the framers of the Constitution inserting a provision in our organic law, that after a man's life has been taken for an offense, that he shall not again be put in jeopardy of life or limb. I have spoken of this most extraordinary statute forming the first chapter in the Code of Criminal Procedure with a spirit of levity, because thereby the perfect nonsense of its pretended construction of our Constitution would perhaps be made more apparent. If a defendant is acquitted of an offense, he enjoys immunity from further prosecution by virtue of the legal force of the very acquittal he pleads in bar of the prosecution, and not by virtue of the provisions of the Constitution in question; and so if he be convicted.

It needs no argument from me to show your honors that the constitutional provision was engrafted upon the body of our organic law for an entirely different purpose, and to protect the citizen from vexatious and frequent prosecution upon insufficient grounds, and to insure him a fair and speedy trial. It is there to protect him from being once put in jeopardy, and then

have his jury discharged without reaching a verdict, and as a protection against (what we seldom see in our country) corrupt judges. Without this provision in the Constitution, it would be in the power of a judge to keep the citizens continually upon trial, by dismissing the juries before trials are concluded. One thing is certain, that if once in jeopardy lawfully, he can never be placed there again for the same offense. The question then presents itself, what is jeopardy? And at what point in a criminal trial does it commence? If the jeopardy only commences after the jury have taken the case, after all other proceedings are ended, or if it only commences with the verdict, then the Legislature is right, and there is no error in the rulings and opinions of the learned judge who presided in the cause, and who followed in opinion the opinion of the Legislature. The English authority upon this question rests not upon the provisions of any particular statute, but upon repeated decisions of the courts; but all American decisions since the Constitution are founded upon the Constitution itself, and all concur that if in jeopardy, if only for a moment, he is entitled to his discharge; and the doctrine is clearly stated as above by Bishop in his Criminal Law, Vol. 1, Sec. 855. A man is not in jeopardy from the finding of the bill or his arrest under it, or even when he has pleaded to the indictment; and the reason is plain, for the tribunal that alone has power to try him (the jury) has not been organized and empanneled. (Burdett v. State, 9 Texas, 43; Page v. Fisher, 14 Wendell; Bishop's Criminal Law, Vol. 1, § 856.)

When a jury has been empanneled and sworn to try the cause, and the defendant has pleaded to the indictment, then his jeopardy begins. (Bishop, Vol. 1, § 856; State v. McKee, 1 Bailey, 651; Weinzorpflin v.

State, 7 Blackford, 186; State v. Walker, 26 Indiana, 346.) I would call the especial attention of your honors to the thorough investigation of the whole doctrine of legal jeopardy in the excellent treatise of Mr. Bishop. The whole subject is so thoroughly and carefully considered, both from principle and in the light of adjudicated cases, that there seems to me nothing left unsaid. The only question, concludes the author, is, was he in jeopardy, and for the same offense? and the two being answered affirmatively, the defendant is entitled to his discharge. (Bishop's Criminal Law, §§ 855 to 863, inclusive, Vol. 1.)

From the authorities cited, as well as from the reason of the provision itself, it seems to me beyond all controversy, that if it clearly be made to appear that the defendant has at one time been put upon his trial, his jury empanneled, sworn, and the testimony gone into, that the power does not exist in any court for any cause to discharge the jury from the consideration of the cause without the defendant's consent, unless, indeed, it be that by operation of law the term for holding the term of the court has expired. In this case, if it please your honors, the district attorney was satisfied with the sufficiency of his testimony. He urged upon the jury that it was sufficient. The testimony was all closed, and the judge, of his own motion, discharged the jury, and ordered a *nolle prosequi* to be entered, for the reason that the testimony did not support the accusation. The presiding judge had no right to determine the question on the legal sufficiency of the testimony before the jury had passed upon it. I mean no reflections on the learned judge who presided at the trial, and must cordially bear testimony to his perfect fairness in the trial, and his patience during the long discussion arising out of his action at the previous

term.   I have no doubt but that his action conformed to his view of the law.

Another point, your honors will observe, wherein this cause differs from the cases held by the district judge to support his view of the law.   It is this: that there was no exception to the bill of indictment, but, on the contrary, it was admitted to be a good bill.   The same witnesses were called in its support, the same transaction was spoken of; in fact, in all things it was the same cause being tried under both bills of indictment.   He was in jeopardy on a valid bill of indictment for the same offense charged in this cause, and by reason of the law as announced in the authorities above quoted he is entitled to his discharge.

There has been but one direct adjudication in our State courts, as far as I have been able to see.   The case of the State v. Joe Swindle, that went up from this county, and decided at the last term held at Tyler, by Judge Latimer, on the authority of a Tennessee case, does, indeed, decide adversely to the view that I have enunciated.   I have not the decision in Swindle's case before me, neither the case upon the authority of which it was decided, but about the time Judge Latimer's decision was made, I examined the case upon which he mainly relied, and with all due deference to the opinion of Judge Latimer, I venture to remark that your honors, on examination, will find that the case relied on from Tennessee does not support his view of the law.

As I remember it now, the case went off on the effects of a trial under a bad indictment.   It has never been contended that a trial under a bad indictment, or in a court without jurisdiction, amounted to legal jeopardy, and as I now remember the case quoted by the judge in his opinion, it merely decided that a trial under an insufficient indictment did not amount to legal jeopardy.   And

I beg of your honors to reconsider the opinion as one pronounced without sufficient consideration, and under a mistaken view of the authorities relied on.

The only remaining question is one of mixed law and fact, which I propose to consider under the assignment that the testimony was not legally sufficient to support a conviction, and to narrow it down to the real question at issue. I will say that the body was not identified, with legal certainty, as the body of Morgan Evans, charged in the bill of indictment. I know that it would have been sufficient to charge that he killed some un-known person, and then the proof of the murder, and of the body of the murdered man, would have been sufficient; but the State chose to charge that it was Morgan Evans who was murdered, and being so charged, it must be proven before a conviction can be had. The entire facts regarding the identification of the body are fully given in the statement, and your honors will observe that not a single witness who ever knew the murdered man in life saw the body after he was dead. Several witnesses spoke of his general appearance, his size, the color of his hair and whiskers. They spoke of his clothing, of his wagon, of his team, and the contents of his wagon, and of certain papers found upon his person. In all things these corresponded with the clothing, the team, and the appearance of Morgan Evans in his lifetime.

Neither Hale, Callaway, nor the two women had ever known Morgan Evans, and the jury were left to infer from the description given of Morgan Evans in his life-time—the clothing he wore from home, the team and wagon taken in connection with the description of the body, that it was the body of Morgan Evans that was found. I think that I have fairly stated the facts relied upon to identify the body, and I submit to your honors

that it is not sufficient identification. It must certainly appear that Morgan Evans was actually dead before the defendant could be called upon to answer for his murder. Mr. Roscoe cites a case of an acquittal which seems to me to be directly in point. A woman was seen near Tinturn with a child in her arms, at six o'clock in the evening. She arrived at her destination between eight and nine o'clock, without the child. The body of a child was afterwards found in the river near Tinturn, which appeared to be the child of the prisoner. On this, Chief Baron Lord Abinger directed an acquittal, and unless there was evidence to show the child to be dead, the woman could not even be held to account for the child. (See Roscoe, Criminal Evidence, second American edition, page 693.) Does the testimony in this case show that Morgan Evans is really dead?

That he left home with a team, the same in all particulars with the team that the murdered man was driving, is undeniable, except as to one mule, there being no white mule in his team, as there was in the team of the murdered man. When Morgan Evans left home he had two coats—one black, the other gray; and his father swears to the identity of the hat; also, of a dog found near the murder, which was known to have been the dog of Morgan Evans, and left home with him. His father and brother, the only witnesses that knew Morgan Evans, did not see the body, but said he was in person similar to the body described by the other witnesses. Now I ask your honors, from this testimony does it certainly appear that Morgan Evans is dead, and that the body found was his body? Can it be insisted that a body can be be identified by its clothing, or any of the paraphernalia, when there are so many garments similar to each other—so many black and gray coats, and black wool hats?

How can it be said that it appeared beyond doubt, or with the certainty that should characterize the proof of every fact, when the death penalty is about to be inflicted, that Morgan Evans is really dead? How can we know that the body found was not the body of some other man of similar appearance, for your Honors will observe that men of the appearance of the body described abound everywhere where the Saxon blood is disseminated. Will the identification of the surroundings—such as clothing, horses, papers, etc.—amount in law to proof of the body that wore the clothing or rode the horse; or, to state the direct legal proposition, must not the body be identified by some portion of the body itself? (*Vide* Penal Code, § 544, Chap. 9.) I have been informed, that in the great case of the Commonwealth of Massachusetts v. Dr. Webster, the same doctrine was held; but while calling the attention of the court, I do so, never having examined it for myself.

From all the facts and circumstances of the case, and by reason of the authorities herein before cited, I conclude that the defendant ought to have been discharged on motion, or at least on the testimony being adduced of his former jeopardy; or failing in that, that the body not being identified as the body of Morgan Evans, the evidence did not support the verdict.

*W. Alexander*, *Attorney General*, for the State.

OGDEN, J.—The appellant in this case was indicted in the district court for the murder of Morgan Evans, and at the June term, 1871, was tried and convicted of murder in the first degree, and has brought the case to this court for revision by an appeal. The assignment of errors and the record in the case present but two or three questions which are deemed of sufficient import-

ance to require special notice in the decision of this case, as the others have heretofore been decided by this court, or are dependent upon the more important ones we now propose to notice.

It appears from the pleadings, that at a former term of the court the defendant had been indicted for the murder of N. Evans; that he was placed upon trial, a jury was empanneled, and the evidence to sustain the charge was adduced, but failed to prove that any person by the name of N. Evans had been killed; and after the opening argument of the district attorney a. *nolle prosequi* was entered, the jury discharged, and the defendant, by order of the court, was held to await the further action of a grand jury, who subsequently found another indictment against the defendant for the murder of Morgan Evans.

The defendant now claims that he had once been put in jeopardy for the same offense, and that by the provision of the Constitution of the United States and that of this State, he cannot now be legally tried upon the charges in this indictment. That clause of the Constitution which declares, in effect, that no person shall be subject, for the same offense, to be twice put in jeopardy of life or limb, was carefully considered by this court at the last term, in the case of Mosely v. The State, in which we held that the clause of the Constitution referred to has "reference to the trial and verdict, and that no person can legitimately claim an exemption from a second trial under this maxim, unless he has once been tried by a lawful jury, upon a good indictment, and acquitted or convicted." We have carefully reviewed that case, and the authorities there cited, in connection with appellant's brief in this case, and are still of the opinion that the question discussed with so much zeal and ability by counsel for the appellant was there-

correctly settled upon the weight of authority. And though Mr. Bishop, in his valuable work on criminal law, seems to entertain a somewhat different view, yet he admits that there are many exceptions to his apparently rigid rule (Bishop's Crim. Law, Vol. 1, pp. 661 to 668, inclusive), and even enumerates many instances where a party may be subjected to another trial after the cause has been submitted to a jury. And herein, it is believed, he recognized the true rule adopted by Chancellor Kent and Justice Story, that a sound discretion must, of necessity, be left to the judge trying the case to discharge the jury from giving a verdict, "whenever there is a manifest necessity for the act, or the ends of public justice would be defeated."

But in the case at bar it might be denied, with much force, that the constitutional inhibition from putting a person twice in jeopardy for the same offense, could be properly invoked in behalf of the appellant. In the first indictment he was charged with the murder of N. Evans, and in the second with the murder of Morgan Evans. Certainly the indictments charge two separate and distinct offenses; and it might have been claimed, with much plausibility, that the defendant should have been tried on both; that he might have been acquitted on the one and convicted on the other, or acquitted on both, as the facts proven on the trials might have demanded.

For the reasons herein indicated, we think the court below did not err in overruling defendant's motion to be discharged on his plea of former jeopardy.

Appellant also claims that the court erred in overruling his motion for a new trial, because the verdict of the jury was contrary to the evidence; that the testimony did not identify the dead body as that of the person charged to have been murdered. The identifi-

cation of the body of the person charged to have been murdered, was a material fact to have been proven; and unless the jury were fully satisfied of that fact, from the testimony alone, they should have acquitted the defendant. The identification, however, was a fact to be proven as all other facts connected with the trial, and it might have been established by the same character of proof as the identity of the person killing, or the homicide itself; and indeed all the material facts should have been established by the very best testimony the nature of the case was susceptible of; and if this rule was not observed in every particular, it was the duty of the judge to have granted a new trial. It was not neces- sary, however, that all the material facts necessary to constitute the offense charged, should be proven by the direct and positive testimony of eye-witnesses, of the offense charged. But they might have been established to the satisfaction of the jury, and the court trying the case, by the proof of other facts and circumstances con- nected with and surrounding the terrible act, with nearly or quite as much certainty as by the positive testimony of such eye-witness. We are not aware that the law requires any more direct or positive proof, to identify the body of a murdered man, than it does to prove the murder, or to identify the murderer; and yet all should be so completely proven as to leave no reasonable doubt in the minds of the jury, or they should acquit.

In the case at bar, there was no direct and positive proof of the identity of the body found, as the body of Morgan Evans, by any person who knew the deceased during his life, and saw the body after his death. But there was proof of a minute description of the body after death, and the father, who listened to the testi- mony, recognized it as a description of the body of his

son.  Both father and brother recognized the clothing, hat, and other articles found on or near the dead body. There were papers found on the person of deceased which had been given to a man calling himself M. Evans, but a short time previous to his death.  The wagon and team found in possession of the defendant, and some portion of the loading of the wagon, were proven to have been M. Evans's, a short time before his death ; and even the dog on the premises of defendant was proven to have belonged to M. Evans.  These and other circumstances were proven to the jury, to satisfy them that the murdered man was Morgan Evans.  And we are not prepared to say that they erred when they found, by their verdict, that the identification had been proven.

Counsel for appellant complain that the court did not charge the jury in regard to a reasonable doubt.  Such a charge would certainly have been legitimate and proper, and particularly in a trial of so grave a character as the one at bar ; and perhaps the court intended to give the defendant the benefit of that charge, in his first charge to the jury.  But the defendant can hardly complain now, as he failed to ask such a charge on the trial of the case.  We cannot, therefore, decide that error (if error it was) sufficient to authorize a reversal of the judgment, and especially when we consider the character of the testimony before the court on the trial of the case.  We have been unable to discover any error sufficient to authorize us in disturbing the verdict and judgment of the lower court ; and it is affirmed.

AFFIRMED.