## PEOPLE v. JACKSON.

1. CRIMINAL LAW—EVIDENCE.

   The evidence presented at the trial in a prosecution for crime must be such as to permit a finding that guilt of the crime charged has been established beyond a reasonable doubt in order to sustain a conviction.

2. SAME—PRELIMINARY EXAMINATION—CORPUS DELICTI—PROBABLE CAUSE—EVIDENCE.

   The evidence presented at the preliminary examination of persons charged with crime must be such as to permit the examining magistrate to find that a crime has been committed and that there was probable cause to believe the accused committed the crime in order to bind the accused over for trial.

3. SAME—CONFESSION—CORPUS DELICTI.

   A confession cannot be used to establish the *corpus delicti* of an offense.

4. HOMICIDE—CORPUS DELICTI—EVIDENCE.

   The *corpus delicti* of a homicide is sufficiently shown by testimony of the finding of the dead body and evidence of an unnatural cause of death.

5. SAME—CORPUS DELICTI—EVIDENCE.

   Testimony as to unnatural cause of death, principally that of physician who had examined the body of the deceased 8-month-old baby of defendants, charged with the homicide of the child, *held*, sufficient to establish the *corpus delicti* of the crime of manslaughter.

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  20 Am Jur, Evidence § 149 *et seq.*
[2]  14 Am Jur, Criminal Law § 246.
[3, 6]  20 Am Jur, Evidence § 1233.
[4]  20 Am Jur, Evidence § 151.
[5]  26 Am Jur, Homicide §§ 461, 462.
[7]  50 Am Jur, Stipulations § 16.

6. CRIMINAL LAW—CORPUS DELICTI—CONFESSIONS.

Confessions or admissions by defendants, accused of crime, are admissible after testimony has established the *corpus delicti*.

7. HOMICIDE—CORPUS DELICTI—CONFESSIONS—STIPULATIONS.

Formal signed statements of husband and wife, charged with homicide of their 8-month-old daughter whom wife had placed on ground behind car which husband then backed over the child *held*, when coupled with testimony establishing the *corpus delicti*, to justify trial judge's finding that guilt of each had been established beyond a reasonable doubt, the parties having stipulated that the transcript of testimony so showing, and returned and filed by the examining magistrate, constituted the whole testimony to be adduced at the nonjury trial at which no witnesses were called.

Appeal from Menominee; Brown (Ernest W.), J. Submitted Division 3 February 23, 1965, at Marquette. (Docket Nos. 250, 251.) Decided June 21, 1965. Leave to appeal denied by Supreme Court September 14, 1965.

Wilfred Jackson and Gladys Jackson were convicted of manslaughter. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Russell W. Bradley,* Prosecuting Attorney, for the people.

*Kenneth O. Doyle,* for defendants.

J. H. GILLIS, J. Defendants, Wilfred and Gladys Jackson, were convicted in a nonjury trial of committing the crime of manslaughter* in the death of their eight-month-old daughter.

December 11, 1962, the defendants had an argument in their home in Harris, Michigan, and Gladys Jackson in an attempt to keep her husband from leaving the house threatened to place their daughter behind the car on the driveway. (Defendant Gladys

---

* See CL 1948, § 750.321 (Stat Ann 1954 Rev § 28.553).

Jackson, in her formal written statement, said that she had done this on a prior occasion and thereby induced her husband to remain home.)  As Wilfred Jackson left the house his wife followed him with the baby in her arms and after he entered the automobile she either placed or threw the baby behind the wheels of the car.  The defendant husband opened the car door and observed the baby as he was backing out.  He continued out the driveway after running over the infant's head and drove a short distance away before returning to the house. He picked up his wife, who carried the infant, and drove to the office of Dr. Jenke in Bark River, Michigan.

On their way to the doctor's office the car developed a flat tire.  The defendants stopped at the home of Mr. and Mrs. LaPalm for help in changing the tire.  The defendants carried on a brief conversation with the LaPalms while Mr. LaPalm was changing the tire.  Defendant Wilfred Jackson told Mr. and Mrs. LaPalm that he had run over the baby and had killed her.  After the tire was changed the defendants proceeded to the office of Dr. Jenke.

The doctor, who had treated the child on a prior occasion for whooping cough, examined the baby and pronounced her dead.  The doctor called the Delta county sheriff's department which sent out Deputy Sheriff Joseph Hillewaerd and a call apparently went out to the Menominee county sheriff's department and Deputy Sheriff Earl Kell responded. He arrived a short while before Deputy Hillewaerd. Both defendants talked with the two deputies a few minutes later while sitting in the automobile of Deputy Kell.

Defendant Gladys Jackson made a formal signed statement the following day in which she stated that she had placed the baby on the ground behind the

car after her husband had advised her that he was leaving the house.

Defendant Wilfred Jackson made a formal signed statement two days later in which he stated that he saw his wife take the baby out of the crib and follow him out of the house. "She went to the back of the car with the baby in her arms. I didn't think she was going to do it. The motor was running and the car was in motion. I saw her when she tossed the baby. I felt the bump when I hit. It was too late to stop then so I kept on going."

The parties stipulated that the transcript of the testimony returned and filed by the examining magistrate constituted the whole testimony to be adduced at the trial and therefore there were no witnesses called by either side at the trial.

The questions before this Court are whether there was sufficient competent evidence before the examining magistrate to bind defendants over for trial, and whether there was sufficient competent evidence before the trial court to find either or both defendants guilty of the crime of manslaughter.

Under the circumstances of this case an affirmative answer to the second question, of necessity, will control the first since the trial court was required to find defendants guilty beyond a reasonable doubt, whereas, the examining magistrate needed only to find that the offense charged had been committed and that there was probable cause to believe it was committed by each accused. *People* v. *Asta* (1953), 337 Mich 590, 610.

Defendants contend that the *corpus delicti* was not established without the introduction into evidence of their statements or confessions.

It is elementary law that a confession cannot be used to establish the *corpus delicti* of an offense.

In homicide cases the *corpus delicti* is sufficiently shown by testimony of the finding of the dead body and evidence of an unnatural cause of death. 1 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 23, p 42.

Dr. Albert Jenke testified that he was acquainted with the baby and had in fact delivered the child; that he found a compound skull fracture; that the brain substance was absent; that there were dirt smears on the face and head; that pressure on the baby's head had been in a lateral manner; that this type of injury could not have been inflicted by the dropping of the child or by falling out of bed; that the body of the baby had no evidence of any other injuries. Another witness testified that the baby could not crawl or walk.

The testimony established the *corpus delicti* and thereafter the defendants' formal statements, whether characterized as confessions or admissions, were admissible. *People* v. *Asta* (1953), 337 Mich 590.

Counsel questioned whether the defendants' informal statements made to the deputy sheriffs, the doctor or the LaPalms constitute confessions, *res gestae* statements or admissions against interest, but it is not necessary to decide this question.

The formal signed statement of defendant Gladys Jackson is a confession admitting all the necessary elements that go to make up the crime of manslaughter. In his formal signed statement, Wilfred Jackson connects himself with the crime, but attempts to excuse his actions by stating that when the baby was "tossed" it was too late to stop. The trial court and the examining magistrate could reasonably infer from what he said in his formal signed statement ("I didn't think she was going to do it.") that he had been forewarned by the codefendant of

her intentions. His actions after such a warning were inexcusable. His formal statement coupled with the testimony that established the *corpus delicti* justifies the trial court's finding of guilt.
Judgments affirmed.

HOLBROOK, P. J., and FITZGERALD, J., concurred.