PEOPLE *v.* DAWSON

1. HOMICIDE—SECOND-DEGREE MURDER—EVIDENCE—SUFFICIENCY.

Evidence that the defendant and the decedent had been arguing, that the decedent was heard crying, that the defendant called the decedent's aunt and told her to come and get the decedent, and if she didn't he was going to kill her, that the defendant repeated his threat on the day of the crime, and that death of decedent was caused by strangulation is sufficient, if believed by the jury, to sustain a conviction of second-degree murder (MCLA § 750.317).

2. INDICTMENT AND INFORMATION—WITNESSES—INDORSEMENT—DISCRETION—STATUTES.

Additional witnesses may be indorsed before or during trial by leave of the court, and therefore no abuse of discretion occurred where the people called a witness who the prosecution explained was indorsed on motion previously, which was unknown to defense counsel because he had only recently entered the case, and defense counsel said he did not want an adjournment and failed to object to the calling of the witness (MCLA § 767.40).

3. CRIMINAL LAW—NEW TRIAL—SUBSTANTIAL JUSTICE—COURT RULES.

No defect in any ruling or order by the court is grounds for a new trial unless the refusal to take such action is inconsistent

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide §§ 44, 53.
[2] 58 Am Jur, Witnesses § 3.
21 Am Jur 2d, Criminal Law § 328.
[3] 39 Am Jur, New Trial §§ 26–46.
[4] 53 Am Jur, Trial §§ 495–504.
[5] 21 Am Jur 2d, Criminal Law §§ 454, 456.
[6] 8 Am Jur 2d, Bail and Recognizance §§ 69, 78.
[7] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.
[8] 21 Am Jur 2d, Criminal Law §§ 222, 309–317.

with substantial justice, so that where the prosecutor questioned a police officer on redirect examination to determine whether he had interviewed two or four persons on that day in question or had changed his testimony and no prejudice was shown to have resulted to the defendant, this was not ground for a new trial, even if it amounted to impeachment of the prosecution's own witness (GCR 1963, 529.1).

4. CRIMINAL LAW—CLOSING ARGUMENT—REMARKS OF PROSECUTOR.

Remarks of the prosecutor during closing argument are not a basis for setting aside a verdict unless a clear case of abuse which prejudices defendant's rights is shown, and the remark of the prosecutor on closing argument "so that what we are looking at is this objectively" was not the cause of reversible error where no clear case of abuse was shown.

5. CRIMINAL LAW—ARRAIGNMENT—DELAY.

A delay in arraigning a defendant on the warrant is not *per se* reversible error where "confession sweating" is not an issue, so that where defendant was arrested and remained in custody for two days before a complaint was filed formally charging him with first-degree murder, but there was no evidence that the delay resulted in any inculpatory statement or was improper in any other way, no error resulted.

6. BAIL—EXCESSIVE BAIL—DISCRETION.

Setting the amount of bail is discretionary with the court and should be fixed with consideration of the seriousness of the offense charged, the defendant's prior criminal record, and the probability of his appearing at the trial of the case, so that where defendant, charged with second-degree murder had his bail set at $5,000 and the proceedings showed his uncooperative attitude, there was no abuse of discretion.

7. CONSTITUTIONAL LAW—CRIMINAL LAW—SPEEDY TRIAL—FORMAL DEMAND—DELAY.

Reversal of a criminal conviction cannot be based on delay in trial in the absence of a formal demand for trial, and where the only hint of a demand for a speedy trial is defendant's handwritten "motion for dismissal", made three months before the commencement of trial, and much of the delay was the result of a psychiatric examination and of defendant's lack of cooperation with three successive appointed attorneys, his right to a speedy trial was not unconstitutionally denied.

8. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL.

A defendant has a right to counsel at the accusatory stage of an investigation, but the fact that he did not have an attorney at the accusatory stage does not establish that this right was denied him.

Appeal from Recorder's Court of Detroit, Frank G. Schemanske, J. Submitted Division 1 December 11, 1970, at Detroit. (Docket No. 7625.) Decided January 19, 1971.

Melvin Dawson was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Patricia Pernick Boyle,* Assistant Prosecuting Attorney, for the people.

*James A. Sullivan,* for defendant on appeal.

Before: DANHOF, P. J., and HOLBROOK and VANDER WAL,* JJ.

HOLBROOK, J. On April 16, 1968, in the Recorder's Court for the City of Detroit, defendant was found guilty of second-degree murder (MCLA § 750.317 [Stat Ann 1954 Rev § 28.549]) by a jury. Defendant was sentenced to a term of 12-1/2 to 20 years. A motion for new trial was denied and defendant appeals.

On January 31, 1967, at about 4 p.m., one Patricia Jean Rushing was killed, allegedly by the defendant, at their residence in Detroit. Death was caused

* Circuit judge, sitting on the Court of Appeals by assignment.

by strangulation. There was a silk stocking found near the decedent's body.

The only witness for the defense was the defendant himself. He testified that an argument between him and the deceased occurred on the afternoon in question; that he packed her clothes and told her to leave, and she was out in the hallway crying when he went to make a phone call; and that when he returned she had the stocking around her neck.

Defendant raises several issues which we restate and discuss in order.

## I.

Did the trial court err in denying defendant's motion for a new trial because there was not sufficient evidence presented to convict?

In denying a motion for new trial on this issue the trial court said, "As regards the claim that the verdict was against the great weight of the evidence, this court finds affirmatively that there was more than ample competent evidence to support the verdict of the jury".

In 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1639, pp 1973, 1974 the elements of second-degree murder are described thus:

"To constitute murder in the second degree there must be an unlawful killing and a purpose to kill, formed suddenly, preceding and accompanying the act, without that deliberation and premeditation which distinguishes murder in the first degree, but not such sudden provocation and stirring of the passions which precludes the exercise of reason, as would, in a legal sense, exclude the idea of malice aforethought, and thereby reduce the homicide to manslaughter. In murder in the second degree there is malice, but it arises suddenly previous to the killing, as for instance where two men start a quar-

rel, and one of them who could have retreated and made his escape from the other without any fear of his own life, suddenly forms malice and intent to kill. In such case it would be malice aforethought but not premeditated and calculated malice. The division of murder into first and second degree had its origin in Pennsylvania where death was the penalty for murder, and its object was to diminish the area of cases to which the death penalty was applicable.

"At common law if a mortal blow was malicious, although not given with intent to kill, or, if death ensued from an act accompanying an unlawful collateral act, or under such circumstances as showed general malice, such as a reckless disregard of the safety or lives of others, the killing would be murder punishable in the same manner as though perpetrated with the deliberate design of taking the life of the victim."

The evidence presented was ample to satisfy the elements of the crime, viz.:

(1) Witness McGregor heard the argument and crying of decedent.

(2) Ollie Campbell, the decedent's aunt, testified that the defendant had called her and told her to come and get her niece, if she didn't, "he was going to kill her".

(3) Deborah Campbell testified that on the day of the crime the defendant again repeated his threat to kill the decedent.

(4) The medical examiner testified to death by strangulation.

The defendant presented a story which contradicted his guilt, but the jury heard sufficient evidence, which, if believed, would justify a verdict of guilty.

## II.

Did the trial court err in permitting the people's witness, Deborah Campbell, who defendant claims was not indorsed on the information, to testify?

The people explained that the witness had been previously indorsed by motion granted by Judge Olsen. This was apparently not known to the defendant's counsel because he had only recently entered the case. The court asked defense counsel if he wanted an adjournment, to which he replied, "I have no desire to prolong this matter." When Deborah Campbell was called to testify the defense made no objection.

The statute in question which requires the prosecutor to indorse the names of all witnesses known to him also provides: "Names of additional witnesses may be indorsed before or during the trial by leave of the court and upon such conditions as the court shall determine". MCLA § 767.40 (Stat Ann 1970 Cum Supp § 28.980).

This Court has held that " ' "*indorsement of names after filing is wholly within the discretion of the court*" ' " and that " ' "[t]he ultimate question, on review, *is whether the court abused its discretion.*" ' " *People* v. *Keys* (1968), 9 Mich App 482, 488.

No abuse of discretion by the trial court in allowing this witness to testify has been shown.

## III.

Did the trial court err in allowing the prosecutor on redirect examination to impeach his own witness, an investigating police officer?

This question has been phrased in a manner most beneficial to the defendant's position. That is so because impeachment is a rather strong description of the questioning on redirect.

Most dispositive of the issue, however, is the fact that whether the officer interviewed four or two persons that day, or whether he changed his testimony, no prejudice has been shown to have resulted to the defendant.

Accordingly we rule no prejudice resulted therefrom. GCR 1963, 529.1 provides:

".1 Harmless Error. No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice."

## IV.

Was the prosecutor's statement, "So that what we are looking at is this objectively" reversible error?

The statement in question took place during the prosecutor's closing statement. No objection appears to have been made.

In discussing the permissible scope of argument, 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 621, pp 804, 805 states:

"It is only in a very clear case of abuse shown by remarks of the prosecuting attorney, where the respondent's rights have been prejudiced, that the court will set aside a verdict otherwise manifestly proper. The appellate court is not inclined to reverse convictions in criminal cases because of claimed errors during argument, unless such arguments are of a prejudicial nature and contribute to an improper verdict. It is not presumed that jurors in direct violation of their well-known duty will

indulge in unjustifiable inferences from remarks made by counsel during the heat of trial."

Such a "clear case of abuse" has not been shown in this case.

## V.

Was the defendant's arraignment unconstitutionally delayed?

The defendant was arrested on January 31, 1967 and was not arraigned until February 2, 1967. He was fully advised of the *Miranda* warnings and indicated so by a signed statement to that effect.

This issue was not raised at trial but was raised in the motion for new trial which was denied by the trial judge.

The case of *People* v. *Farmer* (1968), 380 Mich 198, most completely discusses the question of delayed arraignment. Uppermost in the Court's consideration is the use of a delay to *extract a confession*. Such a purpose in delaying arraignment is clearly improper. *Mallory* v. *United States* (1957), 354 US 449, 455 (77 S Ct 1356, 1359, 1 L Ed 2d 1479, 1483).

But where no "confession sweating" is in issue, delay in arraigning is not *per se* reversible error. *People* v. *Farmer, supra; People* v. *Nawrocki* (1967), 6 Mich App 46.

Thus, although the defendant did make a nonconfessional statement, which was not introduced by the prosecution, there is no evidence that the delay in question of two days resulted in an inculpatory statement or was in any other way improper.

## VI.

Was the defendant required to post an excessive bond?

The defendant, after the charge was reduced to second-degree murder, had bond set at $1,000 personal; thereafter it was raised to $2,500, and then to $5,000.

The general rule relating to amount of bond is stated as follows:

"The amount of bail is largely a matter of judicial discretion. It should be fixed with consideration of the seriousness of the offense charged, the previous criminal record of the defendant and the probability or improbability of his appearing at the trial of the cause. 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 271, p 311.

Under the circumstances, *i.e.,* with a murder charge and an uncooperative defendant, it cannot be said that judicial discretion was abused in setting the amount of bail.

## VII.

Was the defendant unconstitutionally denied his right to a speedy trial?

The record reveals that the defendant was arrested on January 31, 1967 and did not come to trial until April 3, 1969. In the interim a number of extenuating circumstances contributed to the delay. In the trial judge's opinion the delay was directly attributable to the defendant's lack of cooperation which resulted in the appointment and requested withdrawal of three attorneys. Furthermore, defendant was remanded to the psychiatric clinic which caused more delay.

In Michigan it has been held that reversal of a criminal conviction could not be grounded on delay in the absence of a formal demand for trial. *People* v. *Wickham* (1968), 13 Mich App 650. The formal demand requirement has been held *not* to be

inconsistent with *Klopfer* v. *North Carolina* (1967), 386 US 213 (87 S Ct 988, 18 L Ed 2d 1), which held that the federal right to a speedy trial is applicable to the states. *People* v. *Frazier* (1969), 16 Mich App 38.

The only hint of a demand for speedy trial which can be found in the record is defendant's handwritten "motion for dismissal" *in propria persona* dated January 8, 1969. In this document the defendant referred to his constitutional right to a speedy trial. Trial commenced on April 3, 1969.

Considering the facts it is shown that much of the delay was the result of the defendant's uncooperativeness with his appointed counsel, and that demand for speedy trial, as required in Michigan, was only made three months before commencement of the trial, the defendant was not unconstitutionally denied his right to a speedy trial.

## VIII.

Was the defendant's right to counsel violated?

Defendant claims that he had a right to counsel at the accusatory stage of the investigation.

This legal principle is not denied by the people, but rather they claim that the defendant waived this right by signing a "Constitutional Rights Certificate of Notification" approved in *People* v. *Bynum* (1970), 21 Mich App 596. The people attempted to establish the fact that the defendant had been thus advised on the record, but were prevented from doing so by defendant's objection.

The fact that defendant did not have an attorney at the accusatory stage does not establish that this right was denied him.

Affirmed.

All concurred.