PEOPLE *v* ALLEN

OPINION OF THE COURT

1. HOMICIDE—FELONY-MURDER—EVIDENCE.

A first-degree murder prosecution under the felony-murder theory requires proof of one of the independent felonies listed in the felony-murder statute (MCLA 750.316).

2. HOMICIDE—CORPUS DELICTI.

The *corpus delicti* in a homicide case is established by proof of the dead body and evidence of an unnatural cause of death.

3. HOMICIDE—FELONY-MURDER—CORPUS DELICTI—INDEPENDENT FELONY.

Proof of the independent felony is not part of the *corpus delicti* of a felony-murder prosecution; therefore, the prosecution is not required to establish the independent felony *aliunde* the defendant's confessions, which are admissible to determine the degree of the homicide committed.

4. HOMICIDE—INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

Failure to instruct jury on manslaughter as a lesser included offense of the first-degree murder charged was not error where no evidence existed to support a finding of manslaughter and defendant expressed satisfaction with the instructions as given and did not request a manslaughter instruction.

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur 2d, Homicide § 72.
[2] 40 Am Jur 2d, Homicide § 432 *et seq.*
[3] 40 Am Jur 2d, Homicide § 285.
[4] 40 Am Jur 2d, Homicide § 530.
[5] 40 Am Jur 2d, Homicide § 525 *et seq.*
[6] 21 Am Jur 2d, Criminal Law § 356.
[7] 21 Am Jur 2d, Criminal Law §§ 221, 222.
[8] 40 Am Jur 2d, Homicide § 484.
[9] 47 Am Jur, Searches and Seizures § 19.
[10] 40 Am Jur 2d, Homicide § 285.
[11] 40 Am Jur 2d, Homicide §§ 432, 433.

5. HOMICIDE—INCLUDED OFFENSES—INSTRUCTIONS TO JURY.

Instructing the jury in a felony-murder prosecution that they could return three possible verdicts: guilty of first-degree murder, guilty of second-degree murder, or not guilty, does not come within the decisional prohibition that lesser included offenses cannot be affirmatively excluded.

6. CRIMINAL LAW—PRIVILEGE AGAINST SELF-INCRIMINATION—JURY INQUIRY.

Communication from the jury relative to why defendant had not testified did not warrant the declaration of a mistrial where the trial judge reinstructed the jury that no presumption adverse to defendant was to arise from the fact that he did not take the witness stand.

7. CRIMINAL LAW—PROSECUTOR'S REMARKS.

Prosecutor's remarks in closing argument that the detective assigned to the murder with which defendant was charged had done a beautiful job of investigation was not so prejudicial as to require reversal of defendant's conviction because the remark could not have caused the jury to suspend its own powers of judgment in reviewing the evidence; however, the remark should not have been made since the jury might have construed it as an expression of the prosecutor's personal opinion of defendant's guilt.

8. HOMICIDE—MURDER—FIRST-DEGREE—VERDICT.

Jury's verdict finding defendant "guilty in the first degree", without mentioning murder, was not void where the defendant was charged with first-degree murder and the instructions covered both first- and second-degree murder, because the verdict could reasonably be construed to mean first-degree murder.

9. SEARCHES AND SEIZURES—ARREST WITHOUT A WARRANT.

A gun seized from defendant at the time of his arrest without a warrant was admissible at his trial for felony-murder where a separate evidentiary record, made outside the jury's presence, showed that the arresting officers were sent to an address to investigate a kidnapping complaint, that a woman there informed them that her boyfriend, in an apparent robbery attempt, had been forced at gunpoint to return to his apartment, that the arresting officers, after being admitted into that apartment, noticed an apparently hysterical woman and a man who kept making eye movements toward the defendant and another man, and that one of the arresting officers, in walking toward defendant to ask for identification, saw a partially-hidden gun

beneath a sofa cushion, placed the defendant against the wall for a search, and discovered a gun on defendant who had bent over, as if in pain, in an attempt to grab at the weapon inside his coat; the arrest of defendant without a warrant was justified and the seizure of the gun was an incident to his lawful arrest.

DISSENT BY LEVIN, P. J.

10. HOMICIDE—FELONY-MURDER—CORPUS DELICTI.
   *The corpus delicti of felony-murder, or any essential element of it, cannot be established solely by the extrajudicial statements of the accused; the people must introduce evidence, aliunde defendant's confession, from which the trier of fact may reasonably find that acts constituting all the essential elements of felony-murder have been committed and that someone's criminality was responsible for the commission of those acts (MCLA 750.316).*

11. HOMICIDE — FELONY-MURDER — CORPUS DELICTI — EXTRA-JUDICIAL STATEMENTS.
   *The corpus delicti of felony-murder was not established where the prosecution introduced no evidence, circumstantial or otherwise, except defendant's extrajudicial statements, from which the trier of fact could have reasonably inferred that defendant murdered his victim while attempting to rob him; since defendant's confession alone established the essential element that distinguished the offense of felony or first-degree murder from second-degree murder, the judgment of conviction for first-degree murder should be modified to reduce the offense to second-degree murder and the case remanded for resentencing (MCLA 750.316).*

Appeal from Recorder's Court of Detroit, Don Binkowski, J. Submitted Division 1 October 11, 1971, at Detroit. (Docket No. 10157.) Decided March 27, 1972. Leave to appeal granted, 388 Mich 810.

Jerome Wesley Allen was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Dominick R. Carnovale,*
Chief, Appellate Department, and *Thomas M. Khalil,*
Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: LEVIN, P. J., and R. B. BURNS and J. H.
GILLIS, JJ.

R. B. BURNS, J. Defendant was convicted of a
felony murder. Killing a person while perpetrating
or attempting to perpetrate a robbery constitutes
first-degree murder in this state.[1]

Defendant's first assigned error involves analysis
of one of criminal law's most fundamental princi-
ples:

"An unsupported confession should not be re-
ceived as sufficient evidence of the *corpus delicti.*"[2]
*People* v. *Lane* (1882), 49 Mich 340, 341.

The prosecution was supplied with a number of
"confessions" in the present case due to defendant's
tendency to inform his friends and jail inmates that
he had shot the victim while attempting to rob him.

Evidence independent of the confessions clearly
established the victim was shot by two men and that
defendant was connected with the killing.[3]

---

[1] MCLA 1971 Cum Supp § 750.316 (Stat Ann 1971 Cum Supp § 28-
.548).

[2] Abundant case support for this principle may be found in 1
Gillespie, Michigan Criminal Law & Procedure (2d Ed), § 23,
pp 42–43. A thorough discussion of *corpus delicti* in Michigan case
law may be found in *People* v. *Kirby* (1923), 223 Mich 440. Re-
quiring *corpus delicti* to be proven by more than the defendant's
naked extrajudicial confession is the prevailing American rule. 40
Am Jur 2d, Homicide, § 285, p 551; 7 Wigmore on Evidence (3d
Ed), § 2071, p 395.

[3] In addition to the murder weapon being found on his person
the defendant was seen at the scene of the crime a few moments
prior to its occurrence.

An essential requirement in a first-degree murder prosecution under the felony-murder theory is proof of one of the independent felonies listed in the statute.[4]

Defendant contends that it was necessary for the prosecution, *aliunde* the confession, to establish the independent felony, *i.e.,* the attempted robbery.

The *corpus delicti* in a homicide case has traditionally been established by proof of the dead body and evidence of an unnatural cause of death. *People v. Jackzo* (1919), 206 Mich 183; *People* v. *Jackson* (1965), 1 Mich App 207.[5]

There is little authority throughout the country as to whether or not, under the felony-murder rule, proof of the felony as well as the murder is part of the *corpus delicti.* The State of New York has held that proof of the independent felony is not part of the *corpus delicti* and has admitted confessions into evidence to determine the degree of the crime. *People* v. *Lytton* (1931), 257 NY 310 (178 NE 290, 291–292, 79 ALR 503, 506–507).

In *Lytton,* Chief Judge Cardozo stated (pp 313–315):

"The defendant insists that upon a trial for homicide perpetrated in the commission of another and independent felony (*People* v. *Moran,* 246 NY 100 [158 NE 35 (1927)]; Penal Law [Consol Laws, c 40], § 1044, subd 2), a confession is insufficient evidence to sustain a conviction, though there is corroborating evidence of the fact of the homicide, unless there is also corroborating evidence, *i.e.,* evidence apart from

---

[4] "All murder which shall be  *  *  *  committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping, shall be murder of the first degree." Fn 1, *supra.*

[5] See 1 Gillespie, Michigan Criminal Law & Procedure (2d Ed), § 23, p 42. See, also, 40 Am Jur 2d, Homicide, § 4, p 297.

the confession, of the independent felony, and that the trial judge erred in charging to the contrary.

"The charge is in accordance with the settled doctrine of this court, which deserves to be stated in an opinion, since arguments before us both in this case and in others disclose uncertainty as to the governing principle in the minds of members of the bar.

"Code of Criminal Procedure, § 395, provides that a confession of a defendant 'is not sufficient to warrant his conviction, without additional proof that the crime charged has been committed.' The crime charged against this defendant is homicide, and the fact that a homicide has been committed is proved, without reference to a confession, by the testimony of eyewitnesses as well as by the discovery of the body, bearing tokens of a fatal wound. (*People* v *Deacons,* 109 NY 374 [16 NE 676 (1888)]; *People* v *Brasch,* 193 NY 46, 58 [85 NE 809 (1908)]). This being done, the requirement of the Criminal Code must be held to have been satisfied. The danger that a crime may be confessed when no such crime in any degree has been committed by any one is then sufficiently averted. (*People* v *Deacons, supra*). The considerations of public policy back of this section of the Code are near akin to those back of a section of the Penal Law to the effect that 'no person can be convicted of murder or manslaughter unless the death of the person alleged to have been killed and the fact of killing by the defendant, as alleged, are each established as independent facts; the former by direct proof, and the latter beyond a reasonable doubt.' (Penal Law [Consol Laws, c 40] § 1041; *People* v *Palmer,* 109 NY 110, 114 [16 NE 529, 4 Am St Rep 423 (1888)]). The corroborating evidence being sufficient to confirm the confession of a homicide, the Code does not require that it shall also confirm the confession of a homicide in any particular degree.

"The defendant, indeed, does not contend that there would be need for corroborating evidence of degree if the case had been submitted to the jury under Penal Law, section 1044, subdivision 1, as a homicide committed with a deliberate and premeditated design to kill. The argument is that a different measure of corroboration becomes necessary when the case is submitted under subdivision 2 as a homicide effected without a design to kill by a person engaged in the commission of a felony. The distinction so drawn proceeds upon a false conception of the function of an accompanying felony in a prosecution for the crime of murder. Its function and its significance were clearly expounded by this court, speaking by Hiscock, Ch. J., in *People v Nichols* (230 NY 221 [129 NE 883 (1921)]), a case substantially decisive of the question now before us. Homicide, we said, is not murder 'without evidence of malice and of a felonious intent and a depraved mind.' (*People v Nichols, supra,* 230 NY at page 226 [129 NE 883–884]). The malice or the state of mind may be proved by showing that the act was done with a deliberate and premeditated design to kill. The case will then fall under subdivision 1 (§ 1044). It may be proved by showing that the act was done by one then and there engaged in the commission of another felony. (*People v Enoch,* 13 Wend 159, 174 [27 Am Dec 197 (1834)]; *People v Nichols, supra*). The case will then fall under subdivision 2. In the one case as in the other a single crime is charged, the independent felony like the deliberate and premeditated intent being established solely for the purpose of characterizing the degree of the crime so charged, the evil mind or purpose inherent in the killing. (*People v Enoch, supra*). If there could be any doubt about this, the form of the indictment would be sufficient to dispel it. The rule is settled that there is no need to charge in an indictment that the homicide was wrought in the commission of another felony. It suffices to state in the common-law form

that the defendant acted 'willfully, feloniously, and
with malice aforethought.' (*People* v *Nichols, supra;
People* v *Giblin,* 115 NY 196, 198 [21 NE 1062, 4
LRA 757 ‚1889)] ; *People* v *Osmond,* 138 NY 80 [33
NE 739 (1893)]). This would never do if the inde-
pendent felony were conceived of as changing the
identity of the crime instead of merely characteriz-
ing the degree of culpability to be imputed to the
killer."

In *People* v *Crandell* (1935), 270 Mich 124, the
defendant pled guilty to murder in the first degree;
he killed while attempting to perpetrate a robbery.
The Court stated (pp 127–128) :

"There is no merit in the point that defendant's
confession could not be considered in determining
the degree of the murder.
"In *People* v *Lytton, supra,* 313, it was said: [The
Court then quoted from the *Lytton* case which we
have quoted above, ending with]
" 'The corroborating evidence being sufficient to
confirm the confession of a homicide, the code ‚does
not require that it shall also confirm the confession
of a homicide in any particular degree.'
"No claim is made by defendant, or any one in his
behalf, that he was not guilty of the murder. His
confession of guilt and details of the killing remain
unquestioned."

The trial court did not err by admitting the con-
fessions into evidence.

Defendant next contends the trial court committed
reversible error in failing to charge the jury as to
manslaughter. Defendant's failure to timely object
to the jury instructions waives his right to object
on appeal. *People* v. *Mallory* (1966), 2 Mich App
359; *People* v *Allar* (1969), 19 Mich App 675; *Peo-
ple* v *Mason* (1970), 22 Mich App 595; GCR 1963,
516.2. The trial judge's remark that "there are three

possible verdicts in this particular case; that is, guilty as charged of murder in the first degree or murder in the second degree, or not guilty" does not come within the prohibition of *People v Lemmons* (1970), 384 Mich 1. In addition to defendant's failure to request instructions on the offense of manslaughter and his expressed satisfaction with the instructions as given, no evidence existed which could support a finding of manslaughter. The court therefore was not obligated to charge as to manslaughter. *People v Patskan* (1971), 29 Mich App 354.

After the jury had retired to deliberate, the court informed counsel that some communication had been received from the jury relative to why the defendant had not taken the stand. It is defendant's contention that the jury in arriving at a verdict was considering the fact that he had not taken the stand to testify. Defendant charges that the judge should have immediately dismissed the jury and declared a mistrial. We are aware of the jury's duty to follow the instructions of the court (*People v Howard* [1914], 179 Mich 478; *People v McIntosh* [1967], 6 Mich App 62), but a mistrial is not an appropriate solution for every query regarding jury instructions. Unless it can be shown there was a manifest necessity to declare a mistrial, the time and effort invested in giving defendant a fair trial will not be lost. *People v Parker* (1906), 145 Mich 488; *In re Earle* (1946), 316 Mich 295; 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 698, p 887. In this case the court instructed the jury a second time that "no presumption adverse to him is to arise from the mere fact that he [defendant] does not place himself upon the witness stand".[6]

---

[6] The jury then indicated their comprehension of the instruction.

Defendant claims certain remarks made by the judge in his charge to the jury constituted prejudicial error. Again, defendant's failure to object to the remarks precludes his right to do so on appeal. *People v Mason, supra*. Read in their entirety, the instructions were proper. *People v Dye* (1959), 356 Mich 271; *People v Charles Jackson* (1970), 21 Mich App 132.

Defendant next complains of the following remarks in the prosecutor's closing argument:

"You recall that Detective Hay testified that he got this assignment as the officer in charge of this case of the killing of Dr. Harris the morning after he was killed on January 30, 1970, and through his perseverance and investigation, this case is in court and *it was such a beautiful job of investigation that I think I would have to commend him for the job he has done."* (Emphasis supplied.)

The above emphasized complimentary remark should not have been made. It could have been construed by the jury as an expression of the prosecutor's personal opinion of the defendant's guilt. However, it was not so prejudicial as to require reversal. The remark could not have caused the jury to "suspend its own powers of judgment in reviewing the evidence before it". *People v Humphreys* (1970), 24 Mich App 411, 419. The remark does not present a clear case of abuse. See *People v Dawson* (1971), 29 Mich App 488, 494.

Defendant next claims that the jury's verdict, "We find the defendant guilty in the first degree", was void, since there is no crime in Michigan known as "first degree". "Murder" was not mentioned in the verdict.

The defendant was charged with first-degree murder and the jury instructions covered both first-

and second-degree murder. It is not necessary to void the verdict since it can reasonably be construed to mean first-degree murder. *People* v *Farrell* (1906), 146 Mich 264; *People* v *Jenkins* (1970), 23 Mich App 39.

Defendant's objection to the testimony of a ballistics expert will not be considered since it was not preserved for review by timely objection at trial. *People* v *Lundberg* (1961), 364 Mich 596.

In defendant's last assigned error he alleges that the gun seized from him on the date of his arrest was done so illegally and thus should not have been permitted into evidence. When the gun was first offered into evidence, a separate record, out of the presence of the jury, was made to determine whether the gun had been legally seized. Testimony on this separate record indicates the following facts:

(1) The arresting officers were sent to an address to investigate a kidnapping complaint.

(2) After arriving at the address the arresting officers were told by a woman that in an apparent robbery attempt her boyfriend had been forced at gun point to return to his apartment.

(3) The arresting officers after being admitted into the apartment noticed that a woman in the apartment seemed hysterical and that one man kept making eye movements toward the defendant and another man.

(4) As one of the arresting officers walked toward the defendant to ask for identification he saw a partially hidden gun beneath a sofa cushion.

(5) After he noticed the partially hidden gun the officer placed defendant against the wall.

(6) One of the arresting officers discovered a gun on defendant after the defendant had made a noise as if in pain, had bent over, and had attempted to grab at the inside of his own coat.

The woman's complaint, the peculiar actions of two individuals in the apartment, and the partially hidden gun were sufficient to justify the warrantless arrest of the defendant. MCLA § 764.15(d) (Stat Ann 1954 Rev § 28.874[d]); *People* v *Harper* (1962), 365 Mich 494. The seizure of the murder weapon was incident to a lawful arrest and therefore justified. *People* v *Panknin* (1966), 4 Mich App 19.[7]

Affirmed.

J. H. Gillis, J., concurred.

Levin, P. J. (*dissenting*). I am unable to agree that the *corpus delicti* of first-degree murder can be established without evidence independent of the accused person's confession of the essential element that distinguishes the offense of second-degree murder from first-degree murder. I would, for reasons set out below, modify the judgment of conviction in this case to reduce the offense of which the defendant Allen stands convicted to murder of the second degree and remand for resentencing.

The *corpus delicti* may, of course, be established by circumstantial evidence and reasonable inferences.[1] In this case, however, there is no evidence, circumstantial or otherwise, except the defendant's confession, from which the trier of fact could have reasonably inferred that the murder occurred during the perpetration of an attempted robbery.[2]

---

[7] The facts within the arresting officer's knowledge were sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. See *Beck* v. *Ohio* (1964), 379 US 89 (85 S Ct 223, 13 L Ed 2d 142).

[1] See *Peterson* v *Oceana Circuit Judge*, 243 Mich 215, 217 (1928).

[2] A friend of the defendant testified that he had been driving in an automobile with the defendant and one other person as passengers. They stopped for gasoline across the street from the party store where the victim made a purchase shortly before he was killed. The witness said that the defendant and this other person crossed

The Latin word *"corpus"* means body. *"Delict"* means a wrong or injury. Thus, generically speaking, the *"corpus delicti"* is the body of the wrong or injury.

There can, however, be a considerable difference between the *wrong* practiced and the *injury* suffered.

A store owner whose merchandise is stolen suffers the same injury whether the larceny is perpetrated by a shoplifter or a burglar, although in legal contemplation the wrongs accomplished are different.[3] Likewise, it is of no importance to a homicide victim whether the killer is guilty of the crime of manslaughter or murder, second or first degree—the victim is just as dead one way or the other.

Whatever may be the correct etymological definition of the term *"corpus delicti,"* and, although there are quotations in Michigan cases from other authorities to the effect that the *corpus delicti* of an offense is established upon showing a specified *injury* and

---

the street to the party store, and the defendant pulled a gun and shot a man.

A stock boy in the party store testified that he noticed two men standing in a suspicious manner outside the store just before the killing; he identified the defendant as one of those men.

A customer testified that as she was leaving the store she heard somebody say, "If you move I will shoot you." As she turned around and looked in the direction of the voice she saw two men one of whom was pointing a gun at another man's back. She then ran away. As she started to run she heard a gunshot.

The proprietor of the store testified that he heard gunshots and then saw the victim stumble back into the store exclaiming, "Quick, call the police. I've been shot."

There was no testimony that the victim was asked to raise his hands or that he did so; there was no evidence that anything was taken from his person. For all that appears on this record he was shot for reasons unconnected with an attempted armed robbery. See *People v Eding*, 292 Mich 46 (1939), and *People v Zwierkowski*, 368 Mich 56, 60 (1962), concerning the quantum of proof required to establish the *corpus delicti*.

[3] Breaking and entering a building, other than an unoccupied dwelling, is punishable by imprisonment for not more than ten years. MCLA 750.110; MSA 28.305. Larceny in a building is punishable by imprisonment for not more than four years or a fine of not more than $2,000, or both. MCLA 750.360, 750.503; MSA 28.592, 28.771.

someone's criminality as the source of the injury,[4] the law in this state is clear that the *corpus delicti* of an offense is not established until the people have introduced evidence from which the trier of fact may reasonably find that acts constituting *all the essential elements* of the offense have been committed and that someone's criminality was responsible for the commission of those acts.

The most recent pronouncement by the Michigan Supreme Court was in *People v Barron,* 381 Mich 421, 425 (1968). There the Court declared that in order to establish the *corpus delicti* of breaking and entering in the nighttime the people must show all the essential elements of that crime: first, that someone broke and entered the premises; second, that the culprit entered with a felonious intent; third, that the breaking and entering occurred in the nighttime.

Obviously, it made little difference to the victim of the breaking and entering—the owner of a dry-cleaning establishment—whether the larceny occurred in the daytime or in the nighttime, or whether the garments stolen were lifted off the racks without a breaking and entering. Nevertheless, said the

---

[4] See *People v Ranney,* 153 Mich 293, 296 (1908); *People v Dowd,* 252 Mich 404, 405 (1930).

In both of these cases, despite the language of the Court, all the essential elements of the charged offenses (obtaining money by false pretenses in *Ranney,* and larceny in *Dowd*) were established independently of the accused person's confession. Hence, the language of the Court in those cases was not necessary to decision; there does not appear to have been a conscious choice by the Court of the "injury or loss" approach in preference to the "all essential elements" approach.

The *corpus delicti* of the crime charged in *Dowd* can be proved without proving who committed it, while proof of the *corpus delicti* of the crime charged in *Ranney* can, as a practical matter, ordinarily be made only through evidence connecting a particular person to the commission of the crime. It is, therefore, ironical that the concept that the *corpus delicti* is established upon proof of a specified injury was stated in *Ranney,* and adopted in *Dowd* on the strength of *Ranney.*

Michigan Supreme Court, the *corpus delicti,* the body of the crime, was not established until the people showed all the elements of the offense, including occurrence in the nighttime.   Earlier cases so holding include *People* v *Zwierkowski,* 368 Mich 56 (1962); *People* v *Paton,* 284 Mich 427 (1938); *People* v *Boyce,* 314 Mich 608 (1946); *cf. People* v *Trine,* 164 Mich 1, 3 (1910).

The concept that proof of injury or loss is not enough, that *all* the elements of the crime must be proven to establish the *corpus delicti,* has been recognized in Michigan cases where the offense charged was maintaining a house of ill fame,[5] unlawfully driving away a motor vehicle,[6] and carrying a concealed weapon.[7]   In still other cases the Michigan Supreme Court has recognized that proof of the proscribed intent is part of the *corpus delicti.   People* v *Swetland,* 77 Mich 53, 63 (1889) (uttering and publishing); *People* v *Preston,* 299 Mich 484, 493 (1941) (malicious poisoning of cattle); *Peterson* v *Oceana Circuit Judge,* 243 Mich 215, 217 (1928) (arson).[8]

In *People* v *Kelsch,* 16 Mich App 244, 245 (1969), we said:

"[T]he *corpus delicti* of a crime, or *any* essential element of it, cannot be established solely by the extrajudicial statements of the accused." (Emphasis supplied.)

---

[5] *People* v *Lombardo,* 301 Mich 451, 455 (1942).

[6] *People* v *Limon,* 4 Mich App 440, 442, 444 (1966).

[7] *People* v *Kelsch,* 16 Mich App 244 (1969).

[8] Requiring that the proscribed intent be proved can, of course, be viewed as much the same thing as requiring proof that the source of the injury was someone's criminality.   However, reason dictates that if the law requires, in order to establish the *corpus delicti,* that a particular intent be established independently of an accused's person's confession, that proof of an essential element of the crime should not be dispensed with altogether.

Nevertheless, the hornbook view is, indeed, that the *corpus delicti* of "felonious homicide" consists of evidence of a death and of a criminal agency as its cause. *People* v *Mondich,* 234 Mich 590, 593–594 (1926). Such statements also appear in other Michigan cases where the *corpus delicti* issue was raised in reference to the admissibility of an accused person's confession, but they are for the most part *dictum.*[9]

Only in *People* v *Mondich, supra,* and *People* v *Best,* 218 Mich 141, 146 (1922), did the Supreme Court affirm a conviction of first-degree murder even though the only evidence establishing the added element aggravating the offense from second-degree to first-degree murder was the confession of the defendant.

Bouvier's Law Dictionary is the only authority cited in *Mondich* for the proposition that in cases of "felonious homicide" the *corpus delicti* is the victim's death and a criminal agency. This is not to say that there is not ample authority for Bouvier's and the Supreme Court's statement.[10] That definition is, however, so clearly out of joint with other statements and holdings of the Supreme Court that it cannot properly be viewed as controlling authority. Moreover, while the *corpus delicti* issue was raised in

---

[9] See *People* v *Best,* 218 Mich 141, 146 (1922); *People* v *Kirby,* 223 Mich 440 (1923); *People* v *Jackson,* 1 Mich App 207, 211 (1965); *People* v *Kozlow,* 38 Mich App 517 (1972); *cf. People* v *Coapman,* 326 Mich 321, 330 (1949).

In *Jackson* and *Kirby* the defendant was convicted of manslaughter, not first-degree murder, and, therefore, it was less important to differentiate concerning the state of the defendant's mind when he killed the victim; and in *Kirby* the Court concluded that the *corpus delicti* was not established and reversed the conviction.

In *Coapman* there was, and in *Kozlow* it appears that there may have been, testimony from which a trier of fact could reasonably infer the essential element distinguishing second-degree from first-degree murder.

[10] See 40 Am Jur 2d, Homicide, § 284, p 549.

*Mondich,* the defendant in that case argued only that
the body of the victim was not adequately identified,
not that the element distinguishing second-degree
from first-degree murder—premeditation and de-
liberation in that case—had not been established in-
dependently of his confession. Likewise, in *Best* the
*corpus delicti* issue now before us was not briefed,
nor was it considered at all by the Court.[11] It "is a
well-settled principle that a point 'assumed without
consideration is of course not decided.' *Allen* v
*Duffie,* 43 Mich 1, 11 (1880)". *Chapman* v *Buder,*
14 Mich App 13, 20 (1968).

*People* v *Crandell,* 270 Mich 124 (1935), cited in
the majority opinion, is not in point. There the de-
fendant pled guilty and, therefore, it was not neces-
sary first to prove the *corpus delicti*—the rule that
the *corpus delicti* must be proved independently of a
confession is a safeguard against extrajudicial con-
fessions.[12]

*People* v *Lytton,* 257 NY 310; 178 NE 290, 291–
292 (1931), relied on in the majority opinion, is a
carefully considered opinion by an eminent jurist.
It deals with an analogous question, but *not* the pre-
cise question before us. New York's highest court
there stated that, "[t]he crime charged against this

[11] The *Best* Court said that "the confession and the other facts
and circumstances were sufficient to establish the *corpus delicti*".
(p 146.) If anything is indisputable in this area of the law, it is
that where the people seek to introduce an extrajudicial confession
they must establish the *corpus delicti* independently of the confession
(*People* v *Kirby,* 223 Mich 440, 452 [1923]) and, therefore, the
confession cannot be considered in deciding whether there is suffi-
cient evidence to establish the *corpus delicti.* Upon examination of
the text accompanying the quoted statement and the authorities
cited by the *Best* Court in support, it becomes clear that all the Court
was saying was that there was sufficient evidence to support the
jury's verdict finding the defendant guilty of first-degree murder.
Upon examination of the briefs filed in the Supreme Court it appears
that the *corpus delicti* issue was not argued.

[12] See *People* v *Mahler,* 329 Mich 155 (1950); 2 Underhill's
Criminal Evidence (5th ed), §§ 402–403, pp 1035, 1038.

defendant is *homicide"* (emphasis supplied), and concluded that (1) the *sufficiency of the evidence* to convict the defendant could not be challenged on the ground that his confession that the homicide occurred during the commission of an independent felony was not corroborated by other evidence, and (2) in any event, his confession, showing that a robbery had been attempted, was supported by inferences which could reasonably be drawn from the testimony of other witnesses. In some jurisdictions, New York is one, certain kinds of testimony must be corroborated; *e.g.,* the testimony of accomplices or of a complainant in a rape case, a defendant's extrajudicial confession; unless corroborated, the people's evidence is not sufficient to support a guilty verdict.[13] Michigan has not adopted that approach.

The policy sought to be served by statutes requiring *corroboration* is somewhat different than the policy underlying the common-law rule which makes inadmissible a defendant's extrajudicial confession until the *corpus delicti* has been established.[14] In all

[13] See 3 Wharton's Criminal Evidence (12th ed), § 958, p 402 (rape); § 956, p 397 (perjury); § 959, p 411 (seduction); 2 Wharton's Criminal Evidence (12th ed), § 444, p 221 (accomplices); NY Penal Law, § 130.15; NY Crim Proc Law, §§ 60.22, 60.50.

[14] Although the defendant's confession was inadmissible to establish that the murder was of the first degree, since there was evidence *aliunde* the confession that the victim's death was caused criminally, the confession was admissible to show that the defendant murdered the victim and, hence, was guilty of second-degree murder.

The defendant cannot complain that the confession shows that he committed a greater offense—first-degree murder—as long as it is not used, without evidence *aliunde* the confession, to convict him of that offense. To suppress the confession altogether because it shows an offense all the elements of which have not been established *aliunde* the confession, or to require the excision from the confession before it is introduced in evidence of so much of the confessional statement as shows the commission of another offense not already established by other evidence, is not required in order to enforce the policy that an accused person should not be convicted of a crime solely on the basis of his own confession, nor is it required, on the facts of this case, to avoid misleading the jury or unjustified prejudice of the defendant.

events, the New York Court's statement that "[t]he crime charged against this defendant is *homicide*" loaded the question. Homicide is the killing of one human being by another. It is not necessarily a crime; homicide may be innocent or criminal.[15] Since "homicide" is proved by merely showing that one human being killed another, the New York Court correctly answered the loaded question which it framed.[16]

Whatever may be the law of New York, in Michigan "homicide" is not a crime. In this state, it is "murder" and "manslaughter" that are crimes. Murder—in this state called "second-degree murder" —is a *common-law* crime.[17] First-degree murder is a *statutory* crime; it is the common-law crime of murder with an added element. In order to aggravate the offense from second-degree (common-law)

---

[15] See Perkins on Criminal Law (2d ed), p 28; Clark and Marshall on Crimes (6th ed), § 10.00, p 532.

[16] Judge Crane of that Court, in a separate opinion, spoke to the fundamentals of the matter when he said (257 NY 317; 178 NE 293):

"Personally, I feel that when the charge is murder in the first degree, committed unintentionally while perpetrating another felony, the confession of the felony is not enough—there should be some other evidence that the felony was being committed.

"The important proof in a felony murder is the felony, because this makes the act of killing murder in the first degree, even though the defendant did not intend to kill. The form of the indictment cannot obscure the reality. There are no degrees of crime in a felony murder; the felony being proved, it is murder in the first degree, and nothing else. The jury cannot convict of a lesser degree of the crime. The felony, be it larceny or burglary, must be proved beyond a reasonabledoubt—so the court must charge the jury. Yet under this present rule the felony, be it burglary or larceny, may be established by the defendant's confession alone, whereas if he were being tried for the minor felony, such as burglary or larceny, he could not be convicted solely on his confession. Such inconsistency does not appeal to me. However, the other view has prevailed and is the law for this state."

[17] Murder is criminal homicide committed with malice aforethought. Manslaughter is criminal homicide committed without malice aforethought. Perkins on Criminal Law (2d ed), p 34; 1 Wharton's Criminal Law & Procedure, § 242, pp 522, 527; Clark and Marshall on Crimes (6th ed), § 10.04, pp 561, 566; Moreland, Law of Homicide, p 16.

murder to first-degree (statutory) murder the murder must be "perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or   *   *   *   be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, larceny of any kind, extortion or kidnapping". MCLA 750.316; MSA 28.548.

Second-degree and first-degree murder are separate offenses. Offenders are subject to significantly different penalties: persons convicted of first-degree murder must be sentenced to life imprisonment and may not be paroled; persons convicted of second-degree murder may be sentenced to life imprisonment —parolable after ten years imprisonment—but, in the discretion of the sentencing judge, they may be sentenced to any term of years, and many are placed on probation. A definitional difference which makes for such a radical difference in the law's view of an offender's culpability and in the punishment to which he may be or must be subjected is clearly an essential element.

The rule requiring proof of the *corpus delicti* independently of the accused person's confession was developed in England in murder cases.[18] The statutory grading of murder between second and first degree was an American development which was not accepted in England.[19] Therefore, in England— where first-degree murder was unknown, and where the *corpus delicti* rule developed—it was never nec-

---

[18] Perkins, *The Corpus Delicti of Murder,* 48 Va L Rev 173 (1962); Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession,* 103 U of Pa L Rev 638 (1955); 7 Wigmore on Evidence (3d ed), § 2070, p 393.

[19] See Keedy, *History of the Pennsylvania Statute Creating Degrees of Murder,* 97 U of Pa L Rev 759 (1949); Perkins on Criminal Law (2d ed), p 88; Great Britain Royal Commission on Capital Punishment, Report 1949–1953, app 12, p 467 *et seq.*

essary, either to prove the guilt of the accused or the *corpus delicti,* to introduce additional evidence establishing the element which in this country distinguishes common-law murder from the statutory offense of first-degree murder.

It appears to have been overlooked in the assimilation into our jurisprudence of the English *corpus delicti* rule that the English law of murder and the American law of murder differ; that while both in England and in this country proof that one person has killed another discharges the people's burden of establishing that the common-law crime of murder was committed,[20] in this country, in order to establish all the elements of the statutory crime of *first-degree* murder, the people must additionally prove the element that aggravates the offense committed from second-degree (common-law) murder to first-degree murder.

Just as the people must establish with evidence the essential element distinguishing second-degree murder from first-degree murder in order to convict an accused person of the aggravated offense,[21] so, too, in order to prove the *corpus delicti,* that distinguishing element must be established by evidence independent of the accused person's confession. Otherwise the policy underlying the rule requiring that *all* the elements of the offense be established in-

---

[20] "[P]roof that the accused person killed the victim gave rise to a 'presumption' that the act was done with malice aforethought. Once it was established that the accused killed the victim, the burden was upon the accused to prove circumstances of justification, excuse or mitigation." *People* v *Morrin,* 31 Mich App 301, 315 (1971).

The term "malice aforethought" and the term "premeditation and deliberation" are terms of art having different meanings:

"The connotative similarities between the words 'aforethought' and 'premeditation' have confused many courts; malice aforethought and premeditation are not, in legal terminology, synonymous. Malice aforethought is a term of art firmly rooted in the common law. Premeditation and deliberation are legislative offspring." *People* v *Morrin, supra,* pp 324–325.

[21] See *People* v *Morrin, supra,* p 328.

dependently of a confession—consistently enforced
in many Michigan cases—would be eroded in the
category of cases where the stakes are the highest,
where the accused person has the most to lose and
where one would think that the law would be the most
solicitous of his rights.

The salutary policy requiring independent proof
that a crime has been committed is no longer limited
to murder cases. In this state, in every criminal
prosecution the people must independently prove the
*corpus delicti*. That being the scope of the present
rule, it is clear that the rule as now enforced seeks
to guard against more than the embarrassment to
the state and the injustice to the accused person
which occurs when a "victim" reappears after the ac-
cused person has been hanged—the apparent impetus
for the original development of the *corpus delicti*
rule.[22]

If the rule requiring proof of the *corpus delicti*
independently of the accused person's confession
serves only a formalistic purpose, it should be dis-
carded. If it is retained, it should be retained be-
cause it furthers a judicial policy thought still to be
sound, and that policy should be uniformly applied
in keeping with the underlying rationale.

The *corpus delicti* rule reflects an uneasy feeling
based on experience that persons who attribute
statements to accused persons are often not trust-
worthy witnesses and that confessions are some-
times obtained under circumstances which make
them unreliable. As previously mentioned, in some
jurisdictions in certain kinds of cases the testimony
of the people's principal witness must be corrobo-
rated. In other jurisdictions, including Michigan,
the law demands less. Rather than require, where

---

[22] Note, *Proof of the Corpus Delicti Aliunde the Defendant's Con-
fession,* 103 U of Pa L Rev 638 (1955).

the evidence implicating the defendant in the commission of a crime consists of confessional statements attributed to him, that *his* involvement be corroborated by other evidence, we settle for corroboration by evidence, other than the defendant's statements, that the charged offense has been committed by someone—not necessarily the defendant. The compromise seeks to protect the defendant against conviction for committing a crime that no one committed on the basis of evidence that experience teaches us is sometimes unreliable.

That policy should be applied on a consistent basis in all cases. The rule that the people may not discharge the burden of proving that someone, not necessarily the defendant, committed the charged offense on the strength of a statement attributed to the defendant should be enforced in this case.

The only evidence in this case that the statements attributed to the defendant were in fact made by him comes in the form of testimony of jail inmates and a brother and a girl friend of jail inmates.[23] Those witnesses all had a motive to testify against the defendant, namely, to curry favor with the prosecutorial authorities; none of the witnesses was disinterested. In such a case the law wisely requires that the fact that someone committed the crime charged—here *first*-degree murder—be established through evidence other than statements attributed to the accused person.

I would modify the judgment of conviction to reduce the offense of which the defendant stands con-

---

[23] "[I]t is the settled rule that the *corpus delicti* cannot be established solely by the extrajudicial admission or confession of the accused". *People* v *Barron,* 381 Mich 421, 424 (1968).

"If the fact admitted necessarily amounts to a confession of guilt, it is a confession." *People* v *Porter,* 269 Mich 284, 290 (1934).

victed to murder in the second degree and remand for resentencing.[24]

---

[24] See *People v Morrin, supra,* p 337.

The defendant was not prejudiced in his defense of the charge that he murdered the victim by allowing the jury to learn that his confession of murder was of a murder committed in the course of an attempted armed robbery. See fn 14.